IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 30, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| IN RE: | ) | E1999-01514-COA-R3-CV |
| | ) | |
| ADOPTION OF BRIAN DUSTIN COPELAND and SAVANNAH COPELAND. | ) ) ) | |
| | ) | |
| | ) | |
| | ) | |
| MARIE GRAHAM and JOHN GRAHAM, | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | HAMILTON COUNTY CHANCERY COURT |
| Petitioners-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| TIMOTHY COPELAND, | ) | |
| | ) | HONORABLE W. FRANK BROWN, III, |
| Respondent-Appellant. | ) | CHANCELLOR |


For Appellant

BARRY L. ABBOTT
Cavett & Abbott, PLLC
Chattanooga, Tennessee

For Appellees

JOHN ALLEN BROOKS
Chattanooga, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                                    Susano, J.

The trial court terminated the parental rights of Timothy Copeland ("Father") to his children, Brian Dustin Copeland (DOB: December 1, 1987) and Savannah Copeland (DOB: October 10, 1990). Father appeals, raising the following issues:

> 1. Did the trial court err in exercising jurisdiction over Father in order to terminate his parental rights?
>
> 2. Did the trial court err in finding sufficient statutory grounds for the termination of Father's parental rights?
>
> 3. Did the trial court err in finding that the evidence presented at trial satisfies the clear and convincing standard of proof required to terminate Father's parental rights?

I. Facts

Father has always lived in Alabama. The children, Brian Dustin and Savannah, were born to Father and his wife, Gina Marie Copeland, while they were married and living in Scottsboro, Alabama. They lived in Alabama during the entire period of their marriage. Father's only contact with Tennessee prior to the filing of the petition in the instant case was the time he spent visiting with relatives here.

Father killed his wife in the State of Alabama when Brian Dustin was six and Savannah was three. Shortly after the murder, Father pled guilty to killing Mrs. Copeland and was sentenced to 29 years in prison. Father's first parole eligibility date is in the month of January, 2002.

The petitioners, who are residents of Hamilton County, are the maternal grandparents of the children. Shortly after

2

their daughter's death, they were awarded temporary custody of the children by the Jackson County, Alabama, Juvenile Court. Following the award by the Alabama court, the children's case was transferred to the Hamilton County Juvenile Court, and the petitioners were eventually granted full legal guardianship of the children by that court.

The children had lived with the petitioners for more than three years prior to the filing of their October, 1997, petition to adopt the children and to terminate Father's parental rights. The petition alleges two grounds for termination of Father's parental rights: (1) abandonment pursuant to T.C.A. § 36-1-113(g)(1) (Supp. 1999); and (2) Father's conviction of a crime resulting in a sentence of more than 10 years, at a time when his children were under the age of eight, pursuant to the provisions of T.C.A. § 36-1-113(g)(6) (Supp. 1999).

Prior to the murder of his wife, Father played an active role in the parenting of his children. He has become a model prisoner while incarcerated, successfully completing a rehabilitation program that only 12% of participants complete. He is actively involved in several organizations designed to promote accountability and responsible decision-making. Until the trial court issued what is in effect a no-contact order, Father made several attempts to maintain a relationship with his children.

Rhonda Jacks, the children's mental health counselor, testified at trial that the children suffer from post-traumatic stress disorder. Jacks testified that the children have nightmares, recurrent memories of losing their mother,

3

flashbacks, mood swings, and a variety of other symptoms, all triggered by the murder of their mother, an event heard -- but apparently not seen -- by both children. Jacks opined that the children need a sense of permanency and that further contacts with Father would be harmful to them.

In an order entered November 6, 1998, the trial court found that it had jurisdiction of this matter under the authority of the Uniform Child Custody Jurisdictional Act ("UCCJA"), T.C.A. § 36-6-201 *et seq*. A hearing on the substantive grounds of the petition was held on May 28, 1999. On June 4, 1999, the trial court filed its memorandum opinion and order holding that the evidence clearly and convincingly supported two grounds for termination of Father's parental rights: (1) abandonment under T.C.A. § 36-1-113(g)(1), because, under the definition then in effect, Father willfully failed to support his children; and (2) pursuant to T.C.A. § 36-1-113(g)(6), confinement to a correctional facility under a sentence of ten or more years at a time when his children were both under the age of eight. The trial court also found that the petitioners had demonstrated that termination of Father's parental rights was in the children's best interests. Father's appeal followed.

## II. Standard of Review

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Rule 13(d), T.R.A.P.; *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## III. Jurisdiction

The trial court held that it had jurisdiction over this matter under the authority of the Uniform Child Custody Jurisdiction Act ("UCCJA"), which was in effect at the time the trial court rendered its decision.[1] The UCCJA, which must "be construed to promote [its] general purposes," T.C.A. § 36-6-201(b) (1996), is designed in part to

> [a]ssure that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state.

---

[1]The UCCJA was subsequently replaced by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), effective June 14, 1999. *See* Chapter 389, Public Act of 1999.

T.C.A. § 36-6-201(a)(3) (1996).  Under the UCCJA, a court has jurisdiction to make a "custody determination" if Tennessee is the "home state" of the child at the time of commencement of the proceeding.[2]  T.C.A. § 36-6-203(a)(1)(A) (1996).  A child's "home state" is "the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months...."  T.C.A. § 36-6-202(5) (1996).

The term "custody determination" refers to "a court decision and court orders and instructions providing for the custody of a child, including visitation rights."  T.C.A. § 36-6-202(2) (1996).  A "custody proceeding" is defined to include "proceedings in which a custody determination is one (1) of several issues...."  T.C.A. § 36-6-202(3) (1996).  Under T.C.A. § 36-1-116(h) (Supp. 1999), the filing of an adoption petition is deemed the commencement of a custody proceeding for purposes of the UCCJA.

Father argues that the trial court erred in asserting jurisdiction over this matter because Father does not have the necessary minimum contacts with Tennessee.

Generally, a state may not exercise personal jurisdiction over a non-resident party unless that party has minimum contacts with the state.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).  The Supreme Court has not mandated, however, that every jurisdictional analysis include this minimum contacts

_____

[2]There are other bases of jurisdiction contained in subsection (a) that do not require discussion under the facts of the instant case.

requirement.  In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court stated that the rationale of *International Shoe Co.* was not meant to "suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudication of status, are inconsistent with the standard of fairness."  *Id.*, 433 U.S. at 208 n. 30, 97 S.Ct. at 2582 n. 30.

We have held that "[c]ases involving the custody of children are precisely the type of 'status' cases...alluded to in *Shaffer v. Heitner*."  *Fernandez v. Fernandez*, 1986 WL 7935, *2 (Tenn.Ct.App. M.S., filed July 15, 1986).  *See also* *Warwick v. Gluck*, 751 P.2d 1042, 1045 (Kan.Ct.App. 1988) ("custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner*").  Accordingly, we are persuaded that Tennessee courts may adjudicate child custody issues under the UCCJA even if one of the parents does not have minimum contacts with Tennessee.[3]  *See Fernandez*, 1986 WL 7935, at * 1.

Father next asserts that this case is distinguishable from *Fernandez* in that *Ferndandez* was a custody case and this case concerns the termination of his parental rights.  He argues that, while an exception may apply for custody cases, there is no such exception for proceedings concerning the termination of one's parental rights.  We disagree.

---

[3]It is important to emphasize the difference between the jurisdictional standards under the UCCJA and those under *International Shoe*.  "Rather than directing courts to determine whether the defendant parent has minimum contacts with the forum state, the [UCCJA] directs courts to determine which state has the maximum contacts with the child and his family."  *Ferndandez*, 1986 WL 7935, at *2.

7

Parents have the right to the care, custody and control of their children. ***Stanley v. Illinois***, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). This right is not absolute, however; it may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. ***Santosky v. Kramer***, 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982). An order terminating a parent's rights severs these rights, as well as all parental duties, forever. T.C.A. § 36-1-113(*l*)(1) (Supp. 1999). Therefore, a termination-of-parental rights proceeding determines whether a parent will retain custodial rights of his or her child. We accordingly find and hold that, when construing the UCCJA in light of the general purposes stated in T.C.A. § 36-6-201, a termination of parental rights proceeding constitutes a "custody proceeding" within the meaning of T.C.A. § 36-6-202(3).

Moreover, with respect to whether the minimum contacts test must be satisfied, we find no reason to view a termination of parental rights proceeding differently from that of a pure custody proceeding. In both types of cases, the court's principal determination is where and with whom a child should or should not live. This is necessarily a determination of "status" and, as such, it comes within ***Shaffer's*** "status exception" to the minimum contacts rule of ***International Shoe***. *See* ***In re Interest of M.L.K.***, 768 P.2d 316, 319 (Kan.Ct.App. 1989).

For the foregoing reasons, we find and hold that, in a termination of parental rights action, Tennessee courts may exercise jurisdiction under the UCCJA over a non-resident parent notwithstanding that parent's lack of minimum contacts with Tennessee. Furthermore, because the children in this case have

8

lived in Tennessee with the petitioners for at least six consecutive months prior to the filing of the petition, the trial court did not err in finding that it had jurisdiction to determine whether Father's parental rights should be terminated.

## IV. Grounds for Termination

The next issue raised on appeal is whether the trial court erred in finding a sufficient statutory ground for the termination of Father's parental rights. As previously indicated, the petition alleges two grounds for termination: (1) abandonment pursuant to T.C.A. § 36-1-113(g)(1); and (2) long-term incarceration pursuant to T.C.A. § 36-1-113(g)(6). While we find that the trial court's determination as to the first ground was erroneous, we affirm its holding as to the second.

Under the provisions of T.C.A. § 36-1-113(g)(1), termination of parental rights may be based upon a parent's abandonment of his or her child. "Abandonment" is defined in T.C.A. § 36-1-102(1)(A)(i) (Supp. 1999) as follows:

> [f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child.

*Id.* "Willfully failed to visit" is defined in the Code as "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." T.C.A. § 36-1-

9

102(1)(E) (Supp. 1999).  Most importantly, the most recent version of the statute provides that "[w]illfully failed to support" or "[w]illfully failed to make reasonable payments toward such child's support" means "that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support."  T.C.A. § 36-1-102(1)(D) (Supp. 1999).  It is important to point out that the failure-to-support definitions, as they exist in the most recent version of the statute, do not include an element of intent.

The trial court found that, based on the above definitions, the Father had abandoned his children because he had "not supported his children in the four months preceding the filing of the Petition."

Following the decision in this case, the Supreme Court, on October 4, 1999, found the above definitions of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" to be unconstitutional because they "in effect create an irrebuttable presumption that the failure to provide monetary support for the four months preceding the petition to terminate parental rights constitutes abandonment, irrespective of whether that failure was intentional...."  *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).  The Supreme Court then stated that the definition that was in effect under prior law should be applied until the legislature amends the statute.  *Id*. at 189.

Under the law as it existed prior to *In re Swanson*, an "abandoned child" was defined as

10

> [a] child whose parents have willfully failed
> to visit or have willfully failed to support
> or make reasonable payments toward such
> child's support for four (4) consecutive
> months immediately preceding institution of
> an action or proceeding to declare the child
> to be an abandoned child.

T.C.A. § 36-1-102(1)(A)(i) (Supp. 1994). "Willfully failed to visit" is defined as "the willful failure, over four (4) consecutive months, to visit or to engage in more than token visitation." T.C.A. § 36-1-102(1)(B)(ii) (Supp. 1994). There is no separate definition of "willfully failed to support or make reasonable payments toward such child's support". Thus, under the 1994 law, which is to be applied in light of the Supreme Court's decision in *In re Swanson*, both the failure-to-visit and the failure-to-support definitions contain an element of intent.

Father argues that he has never intended to abandon his children. He contends that he is unable, due to his incarceration, to either generate income to support his children or to visit them despite his desire to do both. On the other hand, the petitioners argue that, because murder is a willful act, the Father's failure to support or visit his children is willful in that it is a direct consequence of his willful killing of the children's mother.

We do not find clear and convincing evidence to support termination of Father's parental rights on the ground of abandonment. Though Father's murder of the children's mother was a willful act, we do not believe that his intent to commit murder translates into an intent not to visit or support. Father has attempted, as far as his limited liberty would allow him, to maintain a relationship with his children. A court order has

11

prevented him from even sending letters to his children or
talking with them on the phone.  There is no evidence that he is
earning income in prison, and thus no evidence that he has the
means to support his children.  Absent some intent, we cannot
terminate his parental rights on the ground that he has willfully
failed to visit or support them.  We therefore find that the
trial court's determination that the Father's parental rights
should be terminated on the ground of abandonment is erroneous.

The second ground upon which the petition for
termination of parental rights is based is found in T.C.A. § 36-
1-113(g)(6).  Under this provision, parental rights may be
terminated where

> [t]he parent has been confined in a
> correctional or detention facility of any
> type, by order of the court as a result of a
> criminal act, under a sentence of ten (10) or
> more years, and the child is under eight (8)
> years of age at the time the sentence is
> entered by the court.

T.C.A. § 36-1-113(g)(6) (Supp. 1999).

Father argues that the statute is intended to provide a
basis for terminating parental rights where there is no
reasonable probability that a parent will be able to maintain any
form of parental relationship with a child for ten or more years
during the child's minority.  He contends that the trial court's
failure to take into account the possibility of his parole in
January, 2002, contravenes the intent of the statute.  The
petitioners emphasize the fact that the statute says nothing
about parole, and argue that to account for the mere possibility
of parole at some time in the future contravenes the statute's

12

purpose of providing a more certain future for the children.

We agree with the petitioners that the trial court did not err in its application of T.C.A. § 36-1-113(g)(6). The elements of the statute are clearly satisfied. Father has been confined to a correctional facility by order of a court for the murder of his wife. When he was sentenced to 29 years in prison, his children were both under the age of eight. The statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison. The evidence does not preponderate against the trial court's finding that, upon clear and convincing evidence, the requirements of the statute have been met. We therefore find and hold that the trial court was correct in finding a basis for terminating Father's parental rights under the provisions of T.C.A. § 36-1-113(g)(6) (Supp. 1999).

V. Standard of Proof

Finally, Father argues that the evidence presented at trial failed to satisfy the standard of proof required to terminate his parental rights. We disagree.

Under T.C.A. § 36-1-113(c), termination of parental rights must be based upon:

> (1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic] parental or guardianship rights have been established; and
>
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

13

T.C.A. § 36-1-113(c)(1)-(2) (Supp. 1999).  Therefore, a finding by clear and convincing evidence that grounds for termination exist is only part of the analysis; the termination must also be in the best interests of the children.

Father argues that the evidence is not clear and convincing that grounds exist for termination or that termination is in the best interests of the children.  In furtherance of this argument, Father relies on the following language in the case of *In re Adoption of Bowling*, 631 S.W.2d 386 (Tenn. 1982):

> The issue before us is whether the conduct of [the father], as found by the Chancellor and affirmed by the Court of Appeals, constitutes an abandonment of his child under the definition of that term which we have hereinabove adopted.  Upon this issue the holding of the Court of Appeals was as follows:
>
>> We hold that when one parent murders his or her spouse and is subsequently sentenced to prison for a substantial period of time, such conduct evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.  Therefore, in the case at bar, [the father] has abandoned his son by virtue of his act of murdering the child's mother and his subsequent prison sentence of 40 years.
>
> If the Court of Appeals is holding that the father's murder of the child's mother and his subsequent imprisonment for 40 years constitutes an abandonment as a matter of law, we are not in complete agreement with that conclusion.  However, we do conclude that the father's murder of the child's mother and his subsequent sentence of imprisonment of 40 years, coupled with the father's entire course of conduct of neglect, failure to support his family and his repeated acts of violence and criminal conduct toward members of the family do support the finding of abandonment made by the lower courts.

14

*Id*. at 389-90.  Father asserts that **Bowling** stands for the proposition that a father's murder of his children's mother and subsequent long-term incarceration does not necessarily constitute abandonment as a matter of law.  He contends that something else is required, and that, because the act that led to his incarceration was an isolated incident, termination of his parental rights was not proper.

As we have previously noted, we agree with Father that petitioners have not established by clear and convincing evidence that Father *willfully abandoned* his children.  We also agree that the evidence tends to establish that he supported his children prior to the murder and that he is now a model prisoner. However, we find that the trial court did not err in determining that there was clear and convincing evidence to support termination on the ground that Father is currently confined to a correctional or detention facility under a sentence of more than ten years and, at the time of the sentence, his children were both under the age of eight.  Furthermore, it should be noted that **Bowling** was decided prior to the introduction of the ground of incarceration as a statutory basis for terminating parental rights, a ground which was first introduced into the Code by Chapter 532, Public Acts of 1995, effective January 1, 1996. **Bowling** simply holds, under the law then in effect, that long-term incarceration is not, *per se*, proof of *abandonment*. Obviously, that case has no application to the issue of whether long-term incarceration, under a subsequently-enacted statute, is a basis for *termination* of the prisoner's parental rights.

We further affirm the trial court's determination that

15

termination is in the best interests of the children.  Jacks, the children's mental health counselor, testified that the children, who were at least within hearing distance of the murder, continue to suffer from post-traumatic stress syndrome triggered by the murder.  They have recurring memories of the event, nightmares, flashbacks and mood swings.  Jacks testified that the children need a sense of permanency and that it would be harmful to them to visit or have any contact with their father.  For these reasons, we find that the trial court did not err in concluding that the evidence was clear and convincing that grounds existed for termination and that termination is in the best interests of the children.

The judgment of the trial court is affirmed.  This case is remanded for further proceedings consistent with this opinion and collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the appellant.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Herschel P. Franks, J.


_____
D. Michael Swiney, J.