IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 29, 2011

**IN RE: LONDON V. P.**

**Appeal from the Juvenile Court for Johnson City**
**No. 38309    Sharon Green, Judge**

_____

**No. E2010-02650-COA-R3-PT-FILED-SEPTEMBER 9, 2011**

_____

The Juvenile Court terminated the parental rights of Andre T. ("Father") to the minor child London V. P. ("the Child") pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and § 36-1-113 (g)(6) (2010).  Father appeals the termination of his parental rights to this Court.  We find and hold that clear and convincing evidence existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and § 36-1-113 (g)(6), and that clear and convincing evidence existed that the termination was in the Child's best interest.  We, therefore, affirm the Juvenile Court's January 3, 2011 order terminating Father's parental rights to the Child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Brandon Derek Sizemore, Johnson City, Tennessee, for the appellant, Andre T.

Janie Lindamood, Johnson City, Tennessee, for the appellees, Mitchell B. and Jewel B.

Donna Michael Hall Bolton, Johnson City, Tennessee, Guardian Ad Litem.

# OPINION

## Background

The Child was born in July of 2006 with cocaine in her system. Shortly after her birth, the Child was placed by the Department of Children's Services with Mitchell B. and Jewel B. ("the Foster Parents" or respectively "Foster Mom"). In November of 2006, the Child was returned to her biological mother ("Mother") for a trial home placement. In December of 2006, full custody of the Child was returned to Mother. In March of 2007, Mother called the Foster Parents and asked them to provide care for the Child. The Foster Parents began keeping the Child a couple of days per week, and eventually were keeping the Child full time.

In May of 2008, Mother was incarcerated on drug related charges. At the time of Mother's arrest, the Child was visiting in Mother's home and drugs and drug paraphernalia were in reach of the Child. Police contacted the Foster Parents who picked the Child up. From May of 2008 until June 1, 2009, the Child remained in the exclusive care of the Foster Parents.

In May of 2009, Mother gave birth to another child who also tested positive for cocaine. The Foster Parents filed an emergency motion for temporary legal custody of the Child, and an order was entered granting them temporary legal custody on June 1, 2009.

An adjudicatory dependency and neglect hearing was held in April of 2010, and the Foster Parents were granted permanent guardianship of the Child. On October 26, 2010, the Foster Parents filed a petition seeking to terminate the parental rights of Father to the Child[1]. The case was tried in November of 2010.

At trial, the Foster Mom testified. The Foster Mom explained that the Child was placed in their home as a foster child by the Department of Children's Services several days after the Child's birth in July of 2006. In September of 2006, custody of the Child was returned to the Child's biological mother. The Foster Mom testified about the period between December of 2006 and July of 2009 stating:

When [the Child's biological mother] was given full custody in December of

---

[1] The parental rights of the Child's biological mother were terminated prior to the trial in Father's case. The biological mother's time to appeal the order terminating her parental rights has expired, and the order terminating the biological mother's parental rights to the Child has become final.

2006 there was about 90 days that we did not get to see [the Child], and then shortly after her mother started calling, and we would get to pick [the Child] up. It started out as a few days during the week, and then that would carry on to the weekends, and we would go several days at a time that we would have her before her mother would call and say bring her back.

In 2008, the Child's biological mother was incarcerated. The Foster Mom testified:

The child had been left with a neighbor. We received a call that her mother was taken to jail, could you come and get her. Then in May of 2008 we received a call from Child Protective Services that the birth mother had given birth to a second child…. Oh, I'm sorry. That was in May of 2009. But like I said, her mother had been incarcerated and we received a call that she delivered the second child and it too tested positive at birth for multiple drugs, and at that time we felt that it was in the best interest of [the Child] to file the petition that we did in June.

The Child lived exclusively with the Foster Parents from May of 2008 until June 1, 2009. In May of 2010 an order was entered granting the Foster Parents permanent guardianship of the Child.

During the four months immediately preceding October 8, 2009, the start of Father's current incarceration, the Foster Parents had legal custody of the Child. During that time Father never contacted them to request visitation with the Child, and never gave the Foster Parents any money or gifts for the Child. The Foster Parents never have received any child support from Father. None of Father's family members have sent the Child any gifts or anything else during the time that the Child has been with the Foster Parents, nor have they attempted to visit the Child.

The Foster Mom testified that the Child is doing well in their home and has bonded with their son who is three years old. The Child was nine months old when the Foster Parents adopted their son, and the Child does not know that the boy is not her brother. The Foster Mom stated: "We've been the constant in her life, and we're the only family that she's had." The Foster Mom testified that the Child has bonded with her foster family. The Foster Parents want to adopt the Child.

Father testified that he resides at the Washington County Detention Center. Father began this incarceration on October 8, 2009. The sentence that Father was serving at the time of trial totaled ten years, eleven months, and twenty-eight days. Father testified

that he has been "in the hole" during his time in jail as punishment for vandalizing the jury box in a courtroom with graffiti. He admitted that this is not the only time that he has been punished for his actions while in jail. Father admitted that he could not provide for the Child at this time, but stated that his family could. When asked, however, Father admitted that his family never has done anything for the Child.

Father testified that in 2007 he had a job detailing cars working five or six days a week for Tony's Detailing and getting paid $7 an hour. When asked how long he held that job, Father replied: "'Til I got violated the end of June.… It was '07. I don't remember the exact date." He served 45 days for this violation and then Tony's Detailing would not hire Father back because he "caught a charge." Father testified that before going to jail he was "living place to place." When asked, Father admitted that he has been in good health. He also admitted that the DNA test showed that he is the Child's biological father.

After the trial, the Juvenile Court entered its detailed order on January 3, 2011 terminating Father's parental rights to the Child after finding and holding, *inter alia*:

> In regard to the parental rights against the Father … the Court finds based on clear and convincing evidence pursuant to T.C.A. 36-1-113 [(g)(1)] and 36-1-102 [(1)(A)] (iv) that the Father has abandoned the minor child by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the minor child. The Father identified a document that established his dates of incarceration[.] [S]ince the child's birth, father was incarcerated from November 16th, 2006 to January 8, 2007, for a total of 53 days, and again on July 3, 2007 until August 17, 2007 a total of 45 days, and lastly he was incarcerated on October 8, 2009 until current. The relevant four month period prior to incarceration in this cause would be the period between July 8, 2009 through October 8, 2009[2], herein identified as the four consecutive months prior to his incarceration. However, the Court may consider father's conduct before and after the identified four month period. Evidence was entered that the Father has an extensive criminal history; certified criminal records were introduced that shows [sic] that the Father received an eight year sentence for drug charges in case #31164[,] that in case

[2]The four month period immediately prior to Father's current incarceration actually would be from June 8, 2009 through October 8, 2009. The Juvenile Court found grounds to terminate Father's parental rights based upon wanton disregard, which under Tenn. Code Ann. § 36-1-102 (1)(A)(iv) is not limited to a specific four month period. The Juvenile Court did not base its decision that grounds for termination existed upon the portion of the statute which requires consideration of a specific four month period. As such, the misstatement in the Juvenile Court's order regarding the four month period constitutes harmless error.

-4-

#32466 he received a nine year sentence for Sale of Schedule II (over .5 grams), which was commuted to a 10 year probation sentence for Possession of Schedule II (over 1 gram for Resale), but was granted probation for ten years; that on July 19, 2010, Judge Lynn Brown found that the defendant had violated the terms and conditions of his probation in case numbers 31164 and 32466b, by his convictions in case #35734 on July 16, 2010, consisting of a plea of guilty to simple possession of schedule VI, possession of drug paraphernalia and criminal impersonation, thus revoking his probation and ordering the defendant to serve a sentence of nine (9) years in the Tennessee Department of Correction.… That in addition based on the Father's testimony and the certified judgments entered into evidence in this cause, the father has received three violations of probation relating to drug charges; he has been in the "hole" while incarcerated for his actions in jail, in addition he pled guilty on [sic] to two charges of Vandalism Docket #0062193, on December 2, 2009 and received two sentences of eleven (11) months and twenty-nine (29) days to CCI, to be served consecutive to an [sic] unexpired sentences. The Court takes note that the vandalism was for carving graffiti into the holding cell and on the jury box in the new court house, demonstrating a disregard and lack of respect for the judicial system.

On July 16, 2010, [Father] pled guilty in case #35734, count #1, to the charge of simple possession of Schedule VI drugs, pursuant to TCA 39-17-418, he received a sentence of 11 months, 29 days, to the County Jail, to be served at 75% consecutive to 31164, 32466b. On Count #2 of 35734, [Father] plead [sic] guilty to Possession of drug paraphernalia pursuant to TCA 39-17-425; he received a sentence of 11 months, 29 days, to the County Jail, to be served at 75% consecutive to count #1 of 35734. On Count #3 of case #35734, Father pled guilty to criminal impersonation pursuant to TCA 39-16-601, and was sentenced to serve six (6) months and twenty-nine (29) days in the county jail, the sentence to run concurrent to count #2 of case #35734. The Affidavits of complaints on Case #35734, were based on actions that occurred on or about October 8, 2009, just prior to the father's incarceration. Pursuant to Tenn. Rules of Evidence #103, additional criminal records were entered for identification purposes only, but were not considered by the Court as a basis of the Court's opinions or findings. Father admitted that he has pending drug related charges in Rockingham, Virginia and that a hold has been placed on him for his return to Rockingham County.

The Father has never established a parental relationship with the minor child. The Father has testified he did not know when he found out he was the

father. Father denied having ever paid any child support, though there was evidence through party statements that he paid the Mother $125.00 in the summer of 2007. Father was employed in the four month period prior to incarceration on October [8], 2009 and had the ability to work and willfully failed to support his child.

Father is currently incarcerated and will be for several years. Father acknowledged on cross examination that he could not provide a safe and stable home for the minor at this time. The Court takes note that none of the Father's family [have] filed petitions in this cause or [have] appeared in this cause.

Evidence in this cause has demonstrated that during the four months prior to the filing of the Termination petition on October 21, 2010, the Father was incarcerated, so the Court must look at the Father's conduct prior to incarceration, which clearly demonstrates a wanton disregard for the welfare of the minor child. Father was convicted and placed on probation in November 2006. That since his sentencing, he has violated his probation three times, by engaging in drug activity, picking up multiple drug charges and a criminal impersonation charge. Since Father's incarceration on October 8, 2009, [Father] has continued to demonstrate wanton disregard, by actions that caused him to receive time in the "hole" and by picking up new charges of vandalism for carving graffiti on the holding cell and the jury box of the new courthouse. His actions demonstrate a total disrespect to the judicial system is [sic] further evidence that his behaviors demonstrate a wanton disregard for the welfare of the minor child.

The Court finds … based on clear and convincing evidence pursuant to T.C.A. 36-1-113 [(g)(1)] and 36-1-102 [(1)(A)] (iv) that the Father has abandoned the minor child by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the minor child [the Child].

\* \* \*

In regard to the alleged ground pursuant to T.C.A. 36-1-113 (g)(6) alleging that the Father has been confined in a correctional or detention facility of any type, by order of the Court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under the age of 8 years at the time of the sentence entered by the Court. The Court … finds based on clear and convincing evidence pursuant to T.C.A. 36-1-113 (g)(6) that the Father has a

current sentence of confinement to a penal institution exceeding ten (10) years and that the minor was under the age of eight years when the Father received the sentence. The minor's birth certificate was entered as proof of the minor's age. The minor was born on July 3, 2006 and was four years old when the Father received the relied upon sentences in July 2010. The Father's consecutive sentences total ten (10) years, eleven (11) months and twenty-eight days. The Father is currently incarcerated; he is ordered to serve a nine years [sic] sentence in confinement with the TDOC on case #31164 and 32466, and 2 consecutive sentences of confinement on 35734, of 11 months and 29 day[s] sentences [sic] in the county jail, all other sentences before the Court were ordered to be served on probation. Evidence is clear and convincing that the father is currently serving a sentence of confinement exceeding 10 years and the father received the sentences in July 2010 at which time the minor child was four years old.

* * *

The Court finds pursuant to T.C.A. 36-1-113 (i) that there is clear and convincing evidence that it is in the best interest of the minor child that the parental rights of her father … be terminated so that she can be adopted by [the Foster Parents]. The [Foster Parents] have been the only stable home the minor has ever known. The Father failed to establish a parental relationship with the minor. According to the Father's testimony, he does not know when he found out about [the Child], though he alleges he did not know about her until he became a party and DNA testing proved she was his biological child. Contradictory testimony was that in 2007, the Father paid the mother $125.00 for child support to the mother. Father has failed to make a lasting adjustment of circumstances and condition to make it safe for the minor to be placed in his custody. Father is facing at least a ten year prison sentence of confinement mostly for drug related charges, he has demonstrated a willful and wanton disregard for the welfare of his child, prior to his petition for paternity and which continued after he became a party to the actions before this court. The Father was employed prior to incarceration and had the ability to pay child support for this child, but willfully failed to do so. [The Foster Parents] have not received any financial support from the father in the more than two years they have had legal custody of the minor child. The Father is incarcerated and cannot provide the minor with a safe and stable home environment. Father's family has not filed any petitions with this Court even though the paternal grandmother appeared in court on one occasion and was aware the minor child was in the custody of the [Foster Parents].

The Father has failed to pay support, with the exception of the $125.00 dollars paid to the Mother in the summer of 2007. The minor child has established such a close parental relationship with the [Foster Parents] and a sibling relationship with the sibling in their home that to remove her from that environment would be detrimental to her. The [Foster Parent's] home is the only stability the minor has ever known. The [Foster Parents] have met all of the minor's needs while in their home. When the [Foster Parents] started keeping the minor child, the minor was behind on her immunizations. Since she has been with the [Foster Parents] all of her needs have been met, including providing a safe, stable and loving home, meeting her medical needs, financial needs, educational needs and religious needs. To grant custody of the child to her father with his current criminal sentences would be detrimental to the child. Father's criminal history, including drug charges, his violations of probations [sic], and his lack of stability, his wanton disregard for the minor's welfare, would be detrimental to the child and place the child at a substantial risk of harm. The child is of an age that the child needs permanency. That the [Foster Parents] have always been there for the minor, they nursed her through withdrawals of cocaine after birth and have met her medical, physical and financial needs. They are the only real family this child has ever known. They are the ones who get up with the child at night, the ones that the child looks to for love and security. The [Foster Parents] intend to adopt once the minor is available for adoption.

The Court finds that there is clear and convincing evidence that it is in the best interest of the minor child that [Father's] parental rights be terminated and that sole guardianship be granted to the [Foster Parents].

(footnote added). Father appeals the termination of his parental rights.

### Discussion

Although not stated exactly as such, Father raises two issues on appeal: 1) whether the Juvenile Court erred in finding and holding that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and § 36-1-113 (g)(6); and, 2) whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated.

The Foster Parents filed a motion with this Court to strike Father's brief on appeal for failure to comply with Tenn. R. App. P. 27(a)(6) and (7)(A). As this Court stated

in *In re: I.R.J.*:

> This Court nonetheless has discretion to suspend operation of the afore cited rules for good cause. Tenn. R. App. P. 2; Tenn. Ct. App. R. 1(a). Although this Court has found waiver in at least one recent termination appeal, that case did not involve waiver of all termination-related issues. *See In re E.M.S.*, No. M2009-00267-COA-R3-PT, 2009 Tenn. App. LEXIS 596, 2009 WL 2707399, at *5 (Tenn. Ct. App. Aug. 27, 2009) (*no perm. app. filed*) (finding waiver of the appellant's best interests argument). We believe the great importance of giving adequate protection to Mother's right to the care and custody of her children is good cause for suspension of the relevant procedural rules in this appeal. *See Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-579 (Tenn. 1993); *see also In re S.L.D.*, No. E2005-01330-COA-R3-PT, 2006 Tenn. App. LEXIS 267, 2006 WL 1085545, at *5 (Tenn. Ct. App. Apr. 6, 2006) (*no perm. app. filed*) (stating that "termination cases are of such importance that the decisions made in these cases must be correct and effective appellate review is essential"). We will therefore address the issues presented in turn.

*In re: I.R.J.*, No. M2009-00411-COA-R3-PT, 2009 Tenn. App. LEXIS 771, at **22-23 (Tenn. Ct. App. Nov. 18, 2009), *no appl. perm. appeal filed*. As this Court found in *In re: I.R.J.*, we find in the instant case that this appeal provides good cause for suspension of the relevant procedural rules. We, therefore, deny the motion to strike Father's brief and will address the issues raised by Father.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights, stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id*. (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g.*, *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Juvenile Court erred in finding and holding that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and § 36-1-113 (g)(6). In pertinent part, Tenn. Code Ann. § 36-1-113 (g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

* * *

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court;….

Tenn. Code Ann. § 36-1-113 (g) (2010). As pertinent to this appeal, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or ….

Tenn. Code Ann. § 36-1-102 (1)(A)(iv) (2010).

The Juvenile Court found and held that clear and convincing evidence existed to terminate Father's parental rights for engaging in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of the Child pursuant to Tenn. Code Ann. § 36-1-102 (1)(A)(iv) (2010). In his brief on appeal, Father asserts that the evidence does not support a finding of wanton disregard because "he made a child support payment of $125.00 in the summer of 2007." Father has missed the point.

-11-

As this Court stated in *In re: Audrey S.*: "We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re: Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). Father has exhibited all of the behaviors listed above. The Juvenile Court specifically found that Father's criminal activity, particularly his drug related activity and his acts of vandalism demonstrate a wanton disregard for the welfare of the Child. We agree. The evidence shows that Father has an extensive criminal history, and that Father has engaged in criminal activity on multiple occasions since the birth of the Child. The record further shows that Father continued to engage in criminal activity even after he was incarcerated. The record shows that Father has violated his probation, engaged in criminal behaviors, been subject to repeated incarceration, and has failed to provide adequate support or supervision for the Child. We find no error in the Juvenile Court's decision that clear and convincing evidence existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(1) and Tenn. Code Ann. § 36-1-102 (1)(A)(iv).

The Juvenile Court also found that grounds existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113 (g)(6). Father argues in his brief on appeal that the Juvenile Court erred by not "account[ing] for any good time or two for ones" when Father "actually testified under oath that he will not have to serve a full sentence, but an abbreviated one at around three and a half years."

As this Court stated in *In re: Adoption of Brian Dustin Copeland*: "The statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison." *In re: Adoption of Brian Dustin Copeland*, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000). Furthermore, we note that the evidence in the record on appeal shows that Father has been in the "hole" for behaviors he has engaged in during his incarceration. As such, we find Father's assertion that he will not have to serve his full sentence but instead will be eligible for an early release due to good behavior to be, at best, difficult to believe, and immaterial in any event.

The evidence in the record on appeal shows that Father had received sentences totaling over ten years and that the Child was under the age of eight at the time the sentences were entered. As such, the Juvenile Court did not err in finding and holding that clear and convincing evidence existed that grounds were proven to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113 (g)(6).

We next consider whether the Juvenile Court erred in finding and holding that it was in the Child's best interest for Father's parental rights to be terminated. With regard

to this issue, the Juvenile Court specifically found that Father had failed to establish a parental relationship with the Child, that Father faced a prison sentence of more than ten years, that Father had demonstrated a wanton disregard for the welfare of the Child, and that despite being employed prior to his incarceration Father had willfully failed to provide any child support for the Child during the time that the Child has resided with the Foster Parents. The Juvenile Court also found that the home of the Foster Parents is the only stable home that the Child has ever known and that the Foster Parents have provided a safe, stable and loving home for the Child and have met her medical needs, her financial needs, her educational needs, and her religious needs. The evidence in the record on appeal does not preponderate against any of these findings made under the clear and convincing evidence standard, and we find no error in the Juvenile Court's finding that it is in the Child's best interest for Father's parental rights to be terminated.

The evidence in the record on appeal does not preponderate against the findings made by the Juvenile Court under the clear and convincing evidence standard that grounds for terminating Father's parental rights were proven and that it was in the Child's best interest for Father's parental rights to be terminated. We, therefore, affirm the Juvenile Court's January 3, 2011 order terminating Father's parental rights to the Child.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the appellant, Andre T.

_____
D. MICHAEL SWINEY, JUDGE

-13-