# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 23, 2014

## IN RE ADOPTION OF JOSHUA M. M. AND ZACHARY M.

**An Appeal from the Circuit Court for Montgomery County**
**No. MC CC CV SA12-0779    Ross H. Hicks, Judge**

**No. M2013-02513-COA-R3-PT - Filed July 28, 2014**

The appeal involves a petition for termination of parental rights and adoption. The children at issue were removed from their parents' Wisconsin home in 2005 based on abuse and neglect. Since 2006, the children have been living with the petitioners, the paternal aunt and her husband. The petitioners filed the instant petition in Tennessee to terminate the parental rights of both the mother and the father and to adopt the children. After a trial, the trial court held that the petitioners had established three grounds for termination: (1) abandonment for failure to visit, (2) abandonment for failure to support, and (3) persistent conditions. It also found that termination of parental rights would be in the children's best interest, and so terminated the parental rights of both biological parents. The parents now appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, J., joined; ALAN E. HIGHERS, P.J., W.S., concurred separately.

Katie B. Klinghard, Clarksville, Tennessee, for the Respondent/Appellants, Kelly M. and Matthew M.

Sharon T. Massey, Clarksville, Tennessee, for the Petitioner/Appellees, Tracy K. and Karen K.

## FACTS AND PROCEDURAL BACKGROUND

Respondent/Appellants Kelly M. ("Mother") and Matthew M. ("Father") have three children together — Joshua M. M. (born in February 2003),[2] Zachary M. (born in May 2004), and Joey M. (born in May 2010). Mother has two other minor children, for whom Father is not the biological parent, Austin (16 years old at the time of trial) and Danny (12 years old at the time of trial). Mother and Father live in Wisconsin, a two-bedroom home with Danny and Joey. Austin lives, and has always lived, with his maternal grandmother, also in Wisconsin.[3] The two children at issue in this appeal are Joshua and Zachary.

In November 2005, Danny, Joshua, and Zachary were living with Mother and Father in their home in Wisconsin. On November 29, 2005, the state of Wisconsin removed the three children from the home based on abuse and neglect. At the time, Joshua was about three years old and Zachary was about 18 months old. The record indicates that the alleged abuse and neglect at that time included unsanitary housing, that the children lacked food, that the there was domestic abuse between the parents, and that Mother and Father had locked the children away in rooms in the home. After removing the children from Mother and Father, the State of Wisconsin placed Danny with his biological father and placed Joshua and Zachary in a foster home in Wisconsin.[4]

---

[1] **Rule 10.  Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2] Joshua's birth certificate does not list a father, but we presume for purposes of this appeal that Father is Joshua's biological parent.

[3] Austin was born with challenging mental disabilities. The record indicates that Mother was only 14 years old when he was born. In light of these difficulties, Mother voluntarily allowed her mother to raise Austin from birth.

[4] Although the facts surrounding Danny's situation are not apparent in this appellate record, Mother indicated at the trial below that Danny was returned to her and Father at some point because Danny's biological "father was mentally unstable and unfit to care for him."

In August 2006, the Wisconsin Department of Child and Family Services ("Wisconsin DCFS") placed Joshua and Zachary in the home of their paternal aunt, Petitioner/Appellee Karen K. ("Aunt"), and her husband, Petitioner/Appellee Tracy K. ("Uncle"). At the time, Aunt and Uncle lived in Leesville, Louisiana.

On approximately July 30, 2007, the Wisconsin DCFS filed a Petition for Appointment of Guardian in the Circuit Court of Kenosha County, Wisconsin ("Wisconsin Court"). The petition asked the Wisconsin Court to appoint Aunt and Uncle as the legal guardians of Joshua and Zachary. In November 2007, the Wisconsin Court entered an order granting that petition. This order was not appealed.

In early 2010, Aunt and Uncle moved with Joshua and Zachary to Clarksville, Tennessee. They all continue to reside together in Clarksville.

Between 2007 and 2012, the record indicates, Mother and Father filed no legal proceedings to regain custody of Joshua and Zachary. This changed in early 2012. On January 4, 2012, Mother and Father filed a motion in the Wisconsin Court to terminate the guardianship of Aunt and Uncle.

On March 22, 2012, while the Wisconsin Court proceedings were still pending, Aunt and Uncle (collectively, "Petitioners") filed a Petition for Adoption and Termination of Parental Rights in the Circuit Court for Montgomery County, Tennessee. On May 10, 2012, Mother and Father (collectively, "Respondents") filed a *pro se* response to the Tennessee petition for adoption. In their response, Mother and Father asserted that the Tennessee trial court did not have jurisdiction because of the ongoing Wisconsin proceedings.

To facilitate resolution of the jurisdictional issues, Judge Ross H. Hicks, who was presiding over the Tennessee action, and Judge Chad G. Kerkman, who was presiding over the Wisconsin action, participated in a conference call. After that call, Judge Hicks issued an order holding the Tennessee proceedings in abeyance pending resolution of the Wisconsin proceedings. On September 25, 2013, the Wisconsin Court entered an order denying the Respondents' motion to terminate the guardianship of Aunt and Uncle. The record does not indicate that the Respondents appealed the Wisconsin Court's order.

With the Wisconsin proceedings resolved, on January 4, 2013, the Petitioners filed a motion in the Tennessee action, asking the trial court to proceed with their petition for termination and adoption. The Tennessee trial court granted the motion and appointed a guardian ad litem ("GAL") for the children. On March 8, 2013, the trial court appointed counsel to represent the Respondents.

Discovery ensued. During the course of discovery, the Petitioners sent written discovery requests to the Respondents; the Respondents did not answer them.

On September 4, 2013, the Tennessee trial court commenced the trial on the petition for termination of the Respondents' parental rights and for adoption. By this time, Zachary and Joshua were nine and ten years old, respectively. They had been in foster care since 2005 and had lived with the Respondents for over 7 years.

The trial court heard testimony from the Petitioners, the Respondents, and also from the paternal grandfather, the father of both Father and Aunt. Nine exhibits were entered into evidence, including the children's health records, photographs, an August 2006 bonding assessment, and the children's school records.

At the conclusion of the trial, the trial court rendered an oral ruling, terminating the parental rights of both Mother and Father and approving adoption of both children by Aunt and Uncle. On October 11, 2013, the trial court entered a written order to that effect. The trial court found that the Petitioners had established by clear and convincing evidence three grounds for termination: (1) abandonment for willful failure to visit, (2) abandonment to provide support, and (3) persistent conditions, *i.e.*, conditions that led to the removal of the children had not been remedied and were not likely to be remedied in the near future.

In its order, the trial court addressed abandonment by failure to visit. It noted that, during the year 2012, there were only ten telephone calls between the children and Respondents. Also during 2012, the only personal contact between the Respondents and the children was in the therapist's office and once at a funeral in Wisconsin. The trial court observed that the Respondents "never came to Tennessee to see the children, even when they were provided visitation." It found that Respondents chose not to even send the children cards, despite having had the opportunity to do so.

As to abandonment by failure to support, the trial court made the factual finding that the only support the Respondents paid was in July 2011 and July 2012. The trial court found under the circumstances that this was only token support.

Regarding the ground of persistent conditions, the trial court noted that the children had been out of the Respondents' care for eight years. Despite the length of time the children had been out of their custody, the trial court found, the Respondents still had not resolved the problems that led to the children's removal.

The trial court then addressed the best interests of the children. Based on the evidence, the trial court found that the children had virtually no relationship with the Respondents.

Considering the relevant statutory factors, the trial court held that terminating the parental rights of both Respondents was in the best interest of both Joshua and Zachary. Accordingly, the trial court terminated the Respondents' parental rights and allowed the Petitioners to adopt Joshua and Zachary. From this order, the Respondents now appeal.

**ANALYSIS**

Under Tennessee Code Annotated § 36-1-113(c), a parent's rights may be terminated based on the following:

> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c) (Supp. 2013); *see State v. Calabretta (In re J.J.C.)*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). Because the decision to terminate parental rights involves fundamental constitutional rights, both elements of section 36-1-113(c) must be proven by clear and convincing evidence. *See In re C.M.R.*, No. M2001-00638-COA-R3-JV, 2002 WL 192562, at *3 (Tenn. Ct. App. Feb. 7, 2002). The clear and convincing standard in termination cases requires more than a "preponderance of the evidence" but is less stringent than the "beyond a reasonable doubt" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). Clear and convincing evidence "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *Id.* Considering this heightened standard, the appellate court reviews the trial court's findings of fact *de novo* on the record, with a presumption that the trial court's factual findings are correct. Tenn. R. Civ. P. 13(d); *see In re C.M.R.*, 2002 WL 192562, at *3; *Graham v. Copeland (In re Adoption of Copeland)*, 43 S.W.3d 483, 485 (Tenn. Ct. App. 2000); *Tennessee Dep't of Human Servs. v. Riley*, 689 S.W.2d 164, 170 (Tenn. Ct. App. 1984). The trial court's conclusions of law are reviewed *de novo*, with no such presumption of correctness. *Copeland*, 43 S.W.3d at 485.

The grounds for termination of the parental rights of a biological parent are found in Section 36-1-113(g) of the Tennessee Code Annotated. A decision to terminate parental rights may be based on any of the grounds enumerated in the statute, and only one ground need be established to support termination. *See In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds*, *In re Audrey S.*, 182 S.W.3d 838, 870-71 (Tenn. Ct. App. 2005). The three grounds for termination relevant to this appeal are (1) abandonment for the willful failure to visit during the four months preceding the petition, Sections 36-1-

113(g)(1) and 36-1-102(1)(A)(i); (2) abandonment for the willful failure to support the children during the four months preceding the petition, Sections 36-1-113(g)(1) and 36-1-102(1)(A)(i); and (3) persistent conditions that likely would prevent the children's safe return to the Respondents' home, Section 36-1-113(g)(3).[5]

On appeal, the Respondents argue that the Petitioners did not prove by clear and convincing evidence the grounds of abandonment by failure to visit and abandonment by failure to support. Importantly, the Respondents do not challenge the trial court's conclusion that the ground of persistent conditions was proven by clear and convincing evidence. Thus, the Respondents have waived that issue. *See In re Zada M.*, No. E2010-02207-COA-R3-PT, 2011 WL 1361575, at *5 (Tenn. Ct. App. Apr. 11, 2011); *A.T.S.*, No. M2004-01904-COA-R3-PT, 2005 WL 229905, at *2 (Tenn. Ct. App. Jan. 28, 2005). Nevertheless, we will briefly address the evidence on persistent conditions.

The evidence at trial showed that Joshua and Zachary had spent almost eight years — nearly all of their young lives — in foster care. Seven of those years were spent living with the Petitioners, many miles away from their biological parents. The evidence at trial, including the testimony of the Respondents themselves, supported the trial court's finding that the Respondents have yet to resolve their domestic relations issues. The Respondents could testify only that they were in "therapy" to manage those issues. Neither Mother nor Father articulated anything they had done since the children's removal that resulted in an improvement of their situation. At the time of trial, they were living in a two-bedroom home

---

[5]The ground of persistent conditions requires the following:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> >
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> >
> > (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

Tenn. Code Ann. § 36-1-113(g)(3).

with two of their minor children, and Father testified that Mother was pregnant with her sixth child. The Respondents conceded that they were struggling financially to take care of themselves and the two children who lived with them; indeed, they cited their marginal financial resources as a reason for their failure to visit or support Joshua and Zachary during the nearly eight years the children had been in foster care.[6] The record is virtually devoid of evidence that the Respondents have improved the conditions that led to the children's removal eight years prior.[7] Therefore, we agree with the trial court that the ground of persistent conditions was proven by clear and convincing evidence.

As noted above, "[o]nly one ground for termination of parental rights need be found by clear and convincing evidence before the court can move on to the best interest analysis." *In re William S.*, No. M2011-02602-COA-R3-PT, 2012 WL 2989132, at \*4 (Tenn. Ct. App. July 20, 2012) (citing *In re C.W.W.*, 37 S.W.3d at 475). Given the clear and convincing evidence of persistent conditions and the fact that the Respondents did not appeal the trial court's holding on the ground of persistent conditions, "we see no need in prolonging this portion of the opinion with an analysis of other grounds found by the trial court and appealed by [the Respondents]."[8] *Id.* We go on, then, to the best interest analysis.

When at least one ground for termination of parental rights has been established, the question becomes whether the party seeking termination has proven, by clear and convincing evidence, that termination of the parental rights of the biological parent is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been held unfit by establishment of a ground for termination of parental rights, then the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts from the fitness of the parent to the child's best interest. *Id.* Because not all parental

---

[6]Mother was unemployed, and Father worked at an hourly-wage job earning $13 per hour.

[7]The only evidence at trial that indicated any slight improvement in the conditions that led to removal of the children was testimony from the paternal grandfather, *i.e.*, the father of both Father and Aunt, that the Respondents' home "appears to be cleaner."

[8]In *In re Angela E.*, 303 S.W.3d 240, 251 n. 14 (Tenn. 2010), the Supreme Court indicated that, in cases on termination of parental rights in which the trial court terminated parental rights based on more than one ground, the intermediate appellate court should review the trial court's findings of fact and conclusions of law as to each ground for termination, to avoid unnecessary remand. In this case, the termination of parental rights was on more than one ground. However, unlike the situation in *In re Angela E.*, the parents in the instant case did not appeal the ground of persistent conditions, so that issue is waived and cannot be raised in any further appeal to the Supreme Court, regardless of whether the evidence in the record supports any of the grounds on which the trial court relied. Under those circumstances, it is unnecessary for us to address the other grounds for termination of parental rights, and we exercise our discretion to go on to the best interest analysis.

misconduct is irredeemable, Tennessee's statutes on termination of parental rights recognize the possibility that, even where grounds are established, terminating the parental rights of an unfit parent may not be in the child's best interest. *Id.* However, in considering the best interest element, courts are to resolve any conflict between the interests of the parent and the interests of the child in favor of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. *See* Tenn. Code Ann. § 36-1-113(i). The list of factors in this subsection "is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005).

On this record, we have no difficulty in concluding that it is in the best interest of Joshua and Zachary to terminate the Respondents' parental rights and give these children the opportunity to be adopted by the Petitioners. Both children have been away from their parents for most of their lives. The trial court found that the children have no bond with the Respondents. The evidence at trial clearly supports this finding, and indeed shows that contact with the Respondents negatively impacts the children's well being. The evidence also shows that the Petitioners have lovingly cared for Joshua and Zachary since 2006, and that both children have thrived in the care of the Petitioners. At the time of trial, both children were doing well in school and were involved in school activities. The fact that, under all of these circumstances, the Respondents would initiate the 2012 action in Wisconsin to terminate the Petitioners' guardianship of Joshua and Zachary shows that these children need the certainty and permanency that can come only with termination of the Respondents' parental rights. We hold that clear and convincing evidence in the record supports the trial court's finding that termination of the Respondents' parental rights is in the best interest of both children.

### CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to the Respondent/Appellants Kelly M. and Matthew M., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE