IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2017

**IN RE CHRISTOPHER J. ET AL.**

**Appeal from the Juvenile Court for Shelby County**
**No. Z2918     Harold W. Horne, Special Judge**

_____

**No. W2016-02149-COA-R3-PT**
_____

Father appeals the termination of his parental rights to two children.  The juvenile court found clear and convincing evidence that Father was criminally convicted of the intentional and wrongful death of the children's mother and that termination of parental rights was in the children's best interest.  We conclude that the record contains clear and convincing evidence to support both findings.  Thus, we affirm the termination of parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Autumn B. Chastain, Memphis, Tennessee, for the appellant, Christopher J.

William R. Bruce, Memphis, Tennessee, for the appellees, John P., Sherry P., and Diane P.

**OPINION**

**I.**

**A.**

On July 21, 2015, John P., Sherry P., and Diane P. ("Petitioners") filed a petition in the Juvenile Court for Shelby County, Tennessee, to terminate the parental rights of Christopher J. ("Father") to his two children, Connor, born January 2005, and Ava, born April 2006.  Petitioners sought to terminate Father's parental rights under Tennessee

Code Annotated § 36-1-113(g)(7), which allows termination of parental rights when one parent "has been convicted of or found civilly liable for the intentional and wrongful death of the child[ren]'s other parent."

For context, we include a brief description of the events that precipitated this termination proceeding, as recounted by the Tennessee Court of Criminal Appeals. "At the time of her disappearance on April 16, 2013, [Heather P. ("Mother") and Father] had been married for over eight years and had two children. They had been separated since January 1, 2013, and had ongoing disputes as to custody of their children." *State v. Jones*, No. W2015-01028-CCA-R3-CD, 2017 WL 192146, at *1 (Tenn. Crim. App. Jan. 17, 2017). After the separation, Father began a "months-long campaign of harassment of [his estranged wife], which became worse as she proceeded toward divorcing him and seeking custody of both children." *Id.* at *19. After initially denying any knowledge of Mother's whereabouts, Father told the police the location of her body. *Id.* at *11. Father was convicted "of the first degree premeditated murder of his estranged wife . . . and the abuse of her corpse, for which he was sentenced, respectively, to life imprisonment and two years to be served concurrently." *Id.* at *1.

Upon appeal, the Tennessee Court of Criminal Appeals affirmed the conviction, finding

> that a reasonable jury could determine that [Father] killed [Mother] to prevent her from testifying regarding child custody at the upcoming court hearing, that he strangled her to death, and that he undertook complicated concealment efforts to make it appear she had decided to abandon the children and disappear, later taking her body to a remote location and setting it ablaze, thus committing the first degree premeditated murder of the victim and concealment of her body.

*Id.* at *19.

B.

The juvenile court held a termination hearing on July 28, 2016. Although Father was incarcerated, he was represented by counsel and participated by telephone. The court also heard testimony from Diane P., the children's cousin and primary guardian. At the outset, without objection, the court took judicial notice of Father's criminal conviction. The remainder of the hearing focused on the best interest of the children.

When Father was arrested for Mother's murder, the children were seven and eight years old. Diane P. and her parents filed a petition for temporary custody of the children, which was granted. By the time of the hearing, the children had been living with Diane P. for over three years. Diane P. had known the children all their lives, and their

2

relationship had grown even stronger during guardianship. According to Diane P., the children were safe, happy, and loved. And she expressed a desire to adopt them. In her opinion, removal from their current home environment would significantly impact the children's emotional wellbeing.

Before Father's incarceration, Ava had been diagnosed with autism. Disciplinary issues at school led to her placement in a special education classroom. Diane P. reported that Ava's diagnosis had changed to emotional dissociation due to trauma, and she was now thriving in school. She was reading above her grade level and had moved into a class for gifted students. She enjoyed spending time with friends and was active in sports. Connor was also thriving in his current home environment. He was doing well both academically and socially and played numerous sports.

The children had no contact with Father since his arrest. Initially, Father attempted to send them messages proclaiming his innocence and asking for help in obtaining his release. Diane P. intercepted the communications because she believed their content would negatively impact the children. The juvenile court subsequently issued a no-contact order preventing Father from having any contact with the children until after his release from prison and then only if a psychological evaluation determined contact to be appropriate. He had not provided any child support while incarcerated.

At the time of the hearing, Father's appeal of his criminal conviction was still pending. Father asked the court to refrain from making a determination until after he had exhausted all avenues of appeal. Father maintained that he wanted to have contact with his children while in prison, and upon his release, he promised to remain sober and drug free.

Based on Father's criminal conviction for the murder of the children's mother, the juvenile court found that Petitioners had proven, by clear and convincing evidence, one ground for termination of Father's parental rights. The court also determined, by the same quantum of proof, that termination of Father's parental rights was in the children's best interest.

## II.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. Our Legislature has identified those situations in which the State's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting

3

forth the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g) (2017).

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). Second, they must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *In re Bernard T.*, 319 S.W.3d at 596. "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). Additionally, as this Court has recently explained, "[w]hen the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). Thus, this Court gives great weight to the credibility accorded to a particular witness by the trial court. *Whitaker*, 957 S.W.2d at 837.

In termination proceedings, we "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007). And our review must extend to "the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In*

*re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016), *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44 (2016).

A.

The juvenile court found clear and convincing evidence that Father's parental rights should be terminated under Tennessee Code Annotated § 36-1-113(g)(7). This statutory ground provides for termination of parental rights when "[t]he parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian." Tenn. Code Ann. § 36-1-113(g)(7). Although Father concedes that he was convicted of murdering his estranged wife, he argues that the juvenile court acted prematurely because his conviction could be overturned on appeal.

We have previously rejected this argument when determining whether parental rights should be terminated under another ground for termination, Tennessee Code Annotated § 36-1-113(g)(6). Subsection 36-1-113(g)(6) permits termination where a parent has been confined for criminal acts and the child is under age 8 when the sentence for those acts is pronounced.[1] *See In re Audrey S.*, 182 S.W.3d 838, 876 (Tenn. Ct. App. 2005). We held that a pending appeal does not prevent application of this ground for termination because a criminal court judgment is "entitled to a presumption of correctness unless and until [it is] set aside by a court of competent jurisdiction." *Id.* The juvenile court "need not look beyond the judgment of conviction and the sentence imposed by the criminal court." *Id.*; *see also M.P.P. v. D.L.K.*, No. E2001-00706-COA-R3-CV, 2002 WL 459010, at *5 (Tenn. Ct. App. Mar. 26, 2002) (holding that application of this ground for termination depended on the terms of the criminal judgment and refusing to consider the father's evidence that he would be released early for good behavior); *In re Adoption of Copeland*, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000) (concluding that the elements of the statute were satisfied when father was convicted and the possibility of parole did not alter that conclusion).

The same reasoning applies to termination proceedings under Tennessee Code Annotated § 36-1-113(g)(7). At the time of the hearing, the juvenile court had clear and convincing evidence that Father was criminally convicted of the intentional and wrongful death of the children's other parent. The court was entitled to presume that Father was correctly convicted even though Father had a pending appeal. *See In re Audrey S.*, 182 S.W.3d at 876. And we take judicial notice of the fact that Father's conviction was ultimately affirmed. *See* Tenn. R. Evid. 201; Tenn. R. App. P. 13(c).

---

[1] Parental rights may be terminated when "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court." Tenn. Code Ann. § 36-1-113(g)(6).

B.

As one ground for termination of Father's parental rights was proven by clear and convincing evidence, we turn to the issue of whether termination is in the best interest of the children. Because "[n]ot all parental misconduct is irredeemable[,] . . . Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). Tennessee Code Annotated § 36-1-113(i) lists nine factors that courts may consider in making a best interest analysis.[2] The focus of this analysis is on what is best for the child, not what is best for the parent. *Id.* at 499. Additionally, the analysis should take into account "the impact on the child of a decision

---

[2] The statutory factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

that has the legal effect of reducing the parent to the role of a complete stranger." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006). Although "[f]acts relevant to a child's best interests need only be established by a preponderance of the evidence, . . . the combined weight of the proven facts [must] amount[] to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535.

As our supreme court recently explained,

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. *In re Audrey S.*, 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. *See In re Audrey S.*, 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. *In re Carrington H.*, 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White v. Moody*, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, __ S.W.3d __, No. E2016-00139-SC-R11-PT, 2017 WL 4324959, at *15 (Tenn. Sept. 29, 2017).

Here, the juvenile court concluded that Father's parental rights should be terminated based on these facts:

[1]. That the children have been in the care and custody of Petitioners since April 16, 2013, have developed a close and deep bond with Petitioners, especially Petitioner Diane P[.], and that the children have thrived in this environment. The children have developed socially, emotionally, and academically under the care of Petitioners.

[2]. That the children have not had contact with [Father] since April 16,

7

2013, and that [Father] is under a no contact order with regard to the minor children.

[3]. [Father] has been incarcerated since April 24, 2013, is serving a life sentence and has not provided any support for the children while incarcerated.

[4]. That a change in caretakers and physical environment from that being provided to the children by Petitioners is likely to have a detrimental impact on the children's emotional and psychological condition.

[5]. That Petitioner Diane P[.] has plans for the adoption of the minor children.

The juvenile court's factual findings are supported by a preponderance of the evidence, and we conclude that there is clear and convincing evidence that termination of Father's parental rights is in the children's best interest. Father is serving a life sentence for the first degree murder of the children's mother. The "grounds for termination themselves may . . . show that termination is in the child's best interest." *In re Dominique L.H.*, 393 S.W.3d 710, 717 (Tenn. Ct. App. 2012). Father has exhibited brutality, and physical, emotional, and psychological abuse toward the children's mother. And Father's incarceration prevents him from providing a home for his children or maintaining any meaningful relationship with them.

Father argues that termination of his parental rights is not in the children's best interest because he may someday be released and be reunited with them. Based on this record, however, there is no reasonable expectation that reunification will occur in the near future. In such cases, we have recognized that parental termination may be in the children's best interest. *See In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at *13 (Tenn. Ct. App. Dec. 2, 2005). The children are thriving in their current home and have a strong, loving bond with Diane P., who wishes to adopt them. Termination of parental rights allows the potential for adoption, which offers stability and security for the children. "The alternative would be to hold a child's life in limbo for an unknown number of years on the off chance that Father might be released from prison in time to care for the [child] that he barely knows." *In re M.L.P.*, 228 S.W.3d 139, 148 (Tenn. Ct. App. 2007). When viewed from the children's perspective, clear and convincing evidence supports the juvenile court's conclusion that termination is in their best interest.

## III.

For the foregoing reasons, we affirm the juvenile court's decision to terminate parental rights.

_____
W. NEAL MCBRAYER, JUDGE