FILED
11/15/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 4, 2018

IN RE S.D. ET AL.

Appeal from the Circuit Court for Marshall County
No. 2015-CV-9     Lee Russell, Judge

_____

No. M2015-01932-COA-R3-PT

_____

L.D. (mother) appeals the trial court's judgment terminating her parental rights to her children S.D., S.B.D., and M.D.  Both mother and father were convicted of especially aggravated sexual exploitation of a minor and statutory rape.  On September 28, 2007, the criminal court ordered them to serve an effective twelve-year sentence.  After serving less than one year, mother was granted probation and subsequently regained custody of her two older children.  Later, mother gave birth to M.D.  Still later, mother violated probation and returned to jail in July of 2011.  Petitioners filed a petition to terminate parental rights, and for adoption of the children.  The trial court terminated mother's rights to S.D. and S.B.D. on the ground that she was incarcerated under a sentence of ten or more years, and the subject children were under eight years old at the time of the sentence.  Tenn. Code Ann. § 36-1-113(g)(6) (2017).  The court further held that mother had abandoned all three children by failing to visit and support them during the four months immediately preceding her re-incarceration following her probation violation.  Tenn. Code Ann. §§ 36-1-113(g)(1); 36-1-102(1)(A)(iv).  We affirm the trial court's judgment regarding S.D. and S.B.D. pursuant to Tenn. Code Ann. § 36-1-113(g)(6).  We reverse the trial court's judgment terminating mother's rights with respect to M.D. on the ground of abandonment, because the proof at trial fails to demonstrate abandonment for the entirety of the pertinent four-month period.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which and RICHARD H. DINKINS and KENNY ARMSTRONG, JJ., joined.

Emeterio R. Hernando, Lewisburg, Tennessee, for the appellant, L.D.

1

No brief filed on behalf of the appellees, Er.M., El.M., D.C., and C.C.

**OPINION**

**I.**

The criminal convictions against mother and father[1] resulted from several "threesome" sexual encounters involving them and a fourteen-year-old victim. At least one of these violations occurred while the older two children, then ages two and three, were sleeping in an adjacent room. As noted, the criminal court entered the effective twelve-year sentences on September 28, 2007. Mother was granted probation in May of 2008. She successfully petitioned to regain custody of S.D. and S.B.D. shortly thereafter.

On March 26, 2009, M.D. was born. Later, mother became pregnant with her fourth child in early 2011. She testified that it was a difficult, high-risk pregnancy. Mother allowed her sister, petitioner El.M., to take all three children in the early summer of 2011. According to mother, this was because of her health problems related to pregnancy, which resulted in her having to spend significant time in the hospital. Mother's fourth child was delivered prematurely on June 29, 2011. Sadly, the child died the next day.

Mother was arrested on July 13, 2011, for violating her probation. She stated that the violation occurred when she was inadvertently around a woman with a minor child of which she was unaware. On July 19, 2011, the Department of Children's Services filed a petition asking the juvenile court to find the children to be dependent and neglected and award temporary custody to the petitioners, El.M. and her husband. The juvenile court granted the petition the same day. Following a hearing at which the children were adjudicated dependent and neglected, the juvenile court granted custody of S.D. and M.D. to petitioner El.M. and her husband. Custody of S.B.D. was granted to "maternal uncle and aunt," petitioners D.C. and C.C.

On January 6, 2015, petitioners filed a petition to terminate parental rights and to adopt the children. A trial took place on August 15, 2015. Mother and father were the only two witnesses to testify. On June 19, 2017, the trial court entered final judgment terminating mother's parental rights.[2] Mother timely filed a notice of appeal.

---

[1]Father is the biological father of the two older children, S.D. and S.B.D. A second man, E.W., is the biological father of the youngest, M.D. The parental rights of both fathers have been terminated, and neither has appealed.

[2] No reason appears in the record for this nearly two-year delay between trial and entry of final judgment.

2

## II.

Mother raises the following issues:

> 1. Whether the trial court erred in finding clear and convincing evidence to terminate her parental rights on the ground of incarceration under a sentence of ten or more years and children under eight years old at the time of sentencing.
>
> 2. Whether the trial court erred in finding clear and convincing evidence to terminate her parental rights on the grounds of abandonment by failure to visit and to support during the four months immediately preceding her re-incarceration.
>
> 3. Whether the trial court erred in finding, by clear and convincing evidence, that termination of her parental rights is in the best interest of the children.

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash–Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g) (2017). Because termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and

convincing standard establishes that the truth of the facts asserted is highly probable." ***In re Audrey S.***, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. ***In re Angela E.***, 303 S.W.3d at 251 (citing ***In re Marr***, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." ***Id.*** at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." ***In re C.B.W.***, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. ***In re Carrington***, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.").

The Tennessee Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at \*4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

### A.

Tenn. Code Ann. § 36-1-113(g)(6) allows for termination of parental rights when clear and convincing evidence demonstrates that:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Mother concedes that the elements of the above ground for termination have been established for her two older children, S.D. and S.B.D., both of whom were under eight years old at the time she was sentenced. In this regard, mother argues in her brief as follows:

> [Mother] cannot find any valid argument against this strict statutory ground except as to say that she was incarcerated only for about a year from the time she was sentenced on June 18 [*sic*: September 28], 2007, to the time she was placed on probation in May 2008.
>
> After [mother] was out on probation, she lost no time in petitioning the criminal court that convicted and sentenced her in Sullivan County, TN to get custody of her children back. . . . [Mother] took good care of her three children for almost three years up to the time she was re-incarcerated in July 2011.
>
> [Mother] argues that regaining custody back of her children in June 2008 should have canceled or nullified the strict

5

requirements of the ten year or more sentence requirement of the law.

This Court has addressed the concepts of probation and parole in the context of the ten-year sentence requirement on several occasions. In *In re Adoption of K.B.H.*, 206 S.W.3d 80, 84-85 (Tenn. Ct. App. 2006), we stated:

> Tennessee Code Annotated § 36–1–113(g)(6) was interpreted by this Court in *In re Adoption of Copeland*, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000). In *Copeland*, . . . the father argued that the court should take into account the possibility of parole, as well as the probability that, after release, the parent will be able to maintain a relationship with the child for ten or more years during the child's minority. The appellate court in *Copeland* rejected this argument, finding that the requirements of the statute were "clearly satisfied." *Id*. The court stated, "The statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison." *Id*.

> \*     \*     \*

> At the time the statute was enacted, the legislature was certainly aware of parole and other means by which a prisoner could end up released from his or her incarceration prior to expiration of the full sentence, and did not include such circumstances in the language of the statute. As in *Copeland*, we decline to read ambiguity into an unambiguous statute.

Moreover, we have recently addressed a situation similar to mother's in the case of *In re Hayden L.*, No. E2018-00147-COA-R3-PT, 2018 WL 4190986, at \*10 (Tenn. Ct. App., filed Aug. 31, 2018), wherein we stated as follows:

> [A]lthough Mother received a sentence of ten years, she was not initially incarcerated under that sentence. Rather, Mother was granted probation in lieu of confinement. However, the

6

record shows that Mother subsequently violated the terms of her probation, which resulted in imprisonment.

This court has "repeatedly recognized that a court considering a petition for termination of parental rights based on Tennessee Code Annotated section 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey S.*, 182 S.W.3d at 876 (citations omitted). It does not matter that Mother served less than ten years; we only look at the length of the sentence and age of the child at sentencing. *See In re D.M.*, No. M2009-00340-COA-R3-PT, 2009 WL 2461199, at *3 (Tenn. Ct. App. Aug. 12, 2009) (terminating parental rights of father based on Tenn. Code Ann. § 36-1-113(g)(6) even though he had completed his ten year sentence). As this Court held in *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *7 (Tenn. Ct. App. July 21, 2014), perm. app. dismissed (Tenn. Sept. 29, 2014):

> While the statute [i.e., Tenn. Code Ann. § 36-1-113(g)(6)] requires some period of confinement, the legislature did not expressly provide that the actual period of confinement must amount to 10 or more years. We decline to insert such a meaning into the statute when the obvious intention of the statute was to achieve permanency for children whose parents are subjected to the possibility of lengthy prison sentences.

In short, mother is asking this Court to create an exception to section 36-1-113(g)(6) that does not exist as written. Her argument regarding probation and the subsequent return of her children after her first incarceration is appropriately directed to the legislature rather than the judiciary. We affirm the trial court's judgment terminating mother's parental rights to S.D. and S.B.D. on the ground that she was confined in a correctional facility under a sentence of ten or more years, and the children were under eight years of age at the time the sentence was entered.

Mother also argues that the trial court erred in terminating her rights to M.D. on the ground of incarceration for ten years or more. This argument reflects her

interpretation of the trial court's order to include all three children in this ground for termination. We do not agree with this interpretation. The trial court's order does not terminate her rights to M.D., who was not yet conceived at the time of sentencing, on the ground that she was incarcerated under a sentence of over ten years at a time when M.D. was under eight years old. In its final judgment, the trial court makes specific reference to the two older children by name and date of birth in its finding that section 113(g)(6) applies to support termination of mother's rights to them. It does not refer to or mention M.D. at all in this paragraph. Conversely, the trial court directly refers to M.D. in its holding that mother abandoned the children.

**B.**

Tenn. Code Ann. § 36-1-113(g)(1) allows a court to terminate parental rights when it is shown by clear and convincing evidence that the parent has abandoned the child. Tenn. Code Ann. § 36-1-102(1)(A)(iv) defines abandonment as including the following:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration[.][3]

Mother testified that she was arrested for her probation violation on July 13, 2011. The relevant four-month time period is March 13 through July 12, 2011. An examination of the proof presented at trial reveals little information about the second half of this time frame, and no information about the first half.

---

[3] The Tennessee General Assembly has amended this statute to remove the term "willfully" from the definition of abandonment. Instead, "a parent may demonstrate the absence of willfulness as an affirmative defense." *In re L.U.S.,* No. E2017-01777-COA-R3-PT, 2018 WL 5118529, at *3 n.6 (Tenn. Ct. App., filed Oct. 19, 2018). The effective date of the amendment is July 1, 2018. *In re Gabriel B.*, No. W2017-02514-R3-PT, 2018 WL 3532078, at *4 n.7 (Tenn. Ct. App., filed July 23, 2018). "Because this change is substantive rather than procedural or remedial, however, the amended statute will not be applied retroactively to this case." *In re L.U.S.*, 2018 WL 5118529, at *3 n.6; *In re Gabriel B.*, 2018 WL 3532078, at *4 n.7 (citing *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004)).

Mother was the only witness to testify about the pertinent time period.  She stated as follows, in pertinent part:

> Q. [S.D. and M.D.] have been in your sister and her husband's care and custody for the last four years, right?
>
> A. Correct.
>
> Q. And even before your incarceration, they – all three of the children were actually staying with your sister for a period of time.
>
> A. Yes.
>
> Q. And that was due to some issues that you were having, right?
>
> A. I was a high-risk pregnancy.
>
> Q. So you would agree that during at least four months prior to your violation that the children were staying with your sister and her husband?
>
> A. On and off.

*          *          *

> Q. Now let's back up to the four months prior to your current incarceration.  When did you drop the children off with your sister in 2011?
>
> A. She had originally come and picked them up and stated that she wanted my children to go to a church camp with her girls and I was okay with that.
>
> Q. When was that?

A. That was in the summer of 2011. So end of May, right when school had let out. Possibly a few months before because the kids weren't in school at the time so –

Q. They were too young to be in school?

A. No. They were out of school for break.

Q. Out of school, okay.

A. So I let them go and I picked them up. Upon a doctor visit, I was rushed to the hospital. So I called and she had them picked up from my apartment.

Q. Do you remember what month it was at all?

A. I believe it was still the same month of May.

Q. May, okay. And then when did you lose the baby? Because you were pregnant at that time.

A. At the end of June.

Q. The end of June. And then when were you arrested for the probation violation?

A. July 13th.

Q. At the time that she had them, she had them because of the high-risk pregnancy?

A. Yes.

There is no other evidence in the record regarding the situation of the children from mid-March to mid-July. None of the petitioners testified. The petition filed by DCS on July 19, 2011, alleges as follows:

the Department received a referral alleging that the [mother] called her sister, [El.M.], on the first Friday of June to come get the children. The children have been with [El.M.] since that time.

10

*     *     *

> On or about July 8, 2011, [Child Protective Services
> Investigator] Pellowski and Det. Braden interviewed [El.M.].
> Upon interview, [El.M.] stated that she has had the children . .
> . for approximately 5 weeks.

These allegations by DCS are not evidence, but they do support mother's testimony that she allowed her sister to take the children no earlier than May of 2011. There is no proof showing that mother willfully failed to support or to visit prior to May of 2011.[4] Consequently, we must reverse the trial court's judgment terminating her parental rights on the ground of abandonment.

## C.

Because at least one statutory ground supports the termination of mother's rights to S.D. and S.B.D, we now examine whether termination is in the best interest of these two children. We are guided by the statutory factors set forth in Tenn. Code Ann. § 36-1-113(i), which provides:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

---

[4] The trial court found in its final judgment that mother left all three children with Petitioners El.M. and her husband in February of 2011. There is no proof in the record supporting this finding.

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

The trial court expressly considered the best interest factors set forth above. The court determined that factors (1), (3), (4), (5), (6), (7), and (9) weighed in favor of a finding that termination of mother's rights is in the best interest of the children. To begin

with, at the time of the hearing, mother was incarcerated and facing the prospect of roughly seven more years in prison, already having been denied parole once since re-incarceration. Thus, she was in no position to provide for the children's needs for a significant amount of time. Regarding factor (3), the trial court found that mother had "not maintained any visitation or other contact relative to the children." Regarding factor (4), the court found that mother "has no meaningful relationship with her children." Mother admitted that at the time of the hearing, the children had been in petitioners' custody and care for the last four years.

The court found factor number (5) to be "a significant factor," finding that a change of caretakers and physical environment would likely have a detrimental effect on the children's emotional, psychological and medical conditions. The court observed that S.D. has special medical needs, and that a change of custody could have a negative impact on her physical condition. It also noted mother's testimony when she was asked, "what effect do you think it would have on your children to all of a sudden remove them from the homes that they've known for the last four years or greater and be placed in a different home?" and she replied, "traumatic."

The trial court applied factor (6) in favor of termination, finding as follows:

> [Mother and father] were convicted of crimes against minors for sexual acts that were committed in the household while the minor children subject to this case were sleeping in another room. Additionally, [mother and father] videotaped those acts against minors in the household.

Factor (6) requires an inquiry as to "[w]hether the parent . . . has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." The acts for which the parents were convicted certainly involve sexual abuse of a child. They occurred in the parents' household, though the minor victim was not a family member.

Regarding factor (7), "[w]hether the physical environment of the parent's or guardian's home is healthy and safe," the trial court found "no doubt as to the environment that is currently present in the homes of the Petitioners, and the Court is clearly convinced that it is the environment that the children need to be in to promote their safety and wellbeing." However, petitioners declined to put on any proof at trial regarding their household and the children's current physical environment. In light of this lack of evidence to review, we find this factor to be neutral rather than to favor termination. Finally, reviewing factor (9) the court found that mother "ha[s] not paid any

13

child support consistent with the child support guidelines promulgated by the Department pursuant to T.C.A §36-5-101."

We have reviewed the evidence in the record in light of the statutory best interest factors, and find that it does not preponderate against the trial court's finding that it clearly and convincingly demonstrates that termination is in the children's best interest.

## V.

The judgment of the trial court terminating mother's parental rights to S.D. and S.B.D. is affirmed. The judgment of the trial court terminating mother's parental rights to M.D. is reversed. The case is remanded to the trial court for such further action as may be necessary, consistent with this opinion. Costs on appeal are assessed one-half to appellant, L.D., and one-half to appellees, El.M., Er.M., D.C., and C.C.

_____
CHARLES D. SUSANO, JR., JUDGE